IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| 15625 FT. BEND LTD. DBA | § | |
| MERCEDES-BENZ OF SUGARLAND, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION H-12-cv-0600 |
| | § | |
| SENTRY SELECT INSURANCE COMPANY, | § | |
| | § | |
| Defendant. | § | |

**OPINION AND ORDER**

Pending before the Court in the above referenced cause, seeking to recover payment under an Error and Omissions Liability Policy and Commercial Excess/Umbrella Policy issued by Defendant Sentry Select Insurance Company ("Sentry") to Plaintiff 15625 Ft. Bend Ltd. d/b/a Mercedes-Benz of Sugarland ("Mercedes-Benz") for thirty-eight vehicles sold to, but not paid for by, vehicle wholesaler Tag Teams, Inc. and its President, Thinh Tieu a/k/a Timmy Tieu ("Tieu"), removed from state court on diversity jurisdiction, are Sentry's first amended motion for partial summary judgment (instrument #11) and second motion for partial summary judgment (#20). The second motion addresses those claims not covered by the first motion, so that together, they seek summary judgment on all claims in the case. Mercedes-Benz did not respond to the second motion.

After reviewing the record and the applicable law, for the

reasons indicated below, the Court concludes that summary judgment on all claims should be grated in favor of Sentry against Mercedes-Benz.

### Standard of Review

Summary judgment under Federal Rule of Civil Procedure 56(c) is appropriate when, viewing the evidence in the light most favorable to the nonmovant, the court determines that "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." A dispute of material fact is "genuine" if the evidence would allow a reasonable jury to find in favor of the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Initially the movant bears the burden of identifying those portions of the pleadings and discovery in the record that it finds demonstrate the absence of a genuine issue of material fact on which movant bears the burden of proof at trial; a "complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lujan v. National Wildlife Federation*, 497 U.S. 871, 885 (1990); *Edwards v. Your Credit, Inc.*, 148 F.3d 427, 431 (5th Cir. 1998).

If the movant meets its burden and points out an absence of

evidence to prove an essential element of the nonmovant's case on which the nonmovant bears the burden of proof at trial, the nonmovant must then present competent summary judgment evidence to support the essential elements of its claim and to demonstrate that there is a genuine issue of material fact for trial. *National Ass'n of Gov't Employees v. City Pub. Serv. Board*, 40 F.3d 698, 712 (5ᵗʰ Cir. 1994). "[A] complete failure of proof concerning an essential element of the nonmoving party's case renders all other facts immaterial." *Celotex*, 477 U.S. at 323. The nonmovant may not rely merely on allegations, denials in a pleading or unsubstantiated assertions that a fact issue exists, but must set forth specific facts showing the existence of a genuine issue of material fact concerning every element of its cause(s) of action. *Morris v. Covan World Wide Moving, Inc,*, 144 F.3d 377, 380 (5ᵗʰ Cir. 1998). Conclusory allegations unsupported by evidence will not preclude summary judgment. *National Ass'n of Gov't Employees v. City Pub. Serv. Board*, 40 F.3d at 713; *Eason v. Thaler*, 73 F.3d 1322, 1325 (5ᵗʰ Cir. 1996). "'[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . .'" *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5ᵗʰ Cir. 1990), *quoting Anderson v. Liberty Lobby, Inc.*. 477 U.S. 242, 247-48 (1986). "Nor is the 'mere scintilla of evidence' sufficient; 'there must be evidence on which the jury could reasonably find for

the plaintiff.'" *Id., quoting Liberty Lobby*, 477 U.S. at 252. The Fifth Circuit requires the nonmovant to submit "'significant probative evidence.'" *Id., quoting In re Municipal Bond Reporting Antitrust Litig.*, 672 F.2d 436, 440 (5th Cir. 1978), and *citing Fischbach & Moore, Inc. v. Cajun Electric Power Co-Op.*, 799 F.2d 194, 197 (5th Cir. 1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Thomas v. Barton Lodge II, Ltd.*, 174 F.3d 636, 644 (5th Cir. 1999), *citing Celotex*, 477 U.S. at 322, and *Liberty Lobby*, 477 U.S. at 249-50.

The court must consider all evidence and draw all inferences from the factual record in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *National Ass'n of Gov't Employees v. City Pub. Serv. Board*, 40 F.3d at 712-13.

It is well established in the Fifth Circuit that "[a] federal court may not grant a 'default' summary judgment where no response has been filed." *Bradley v. Chevron U.S.A., Inc.*, No. Civ. A. 204CV092J, 2004 WL 2847463, *1 (N.D. Tex. Dec. 10, 2004), *citing Eversley v. MBank of Dallas*, 843 F.2d 172, 174 (5th Cir. 1988); *Hibernia Nat. Bank v. Administracion Cent. Sociedad Anonima*, 776 F.2d 1277, 1279 (5th Cir. 1985). Nevertheless, if no response to the motion for summary judgment has been filed, the court may find as undisputed the statement of facts in the motion for summary

judgment. *Id.* at *1 and n. 2*, citing id.; see also Thompson v. Eason*, 258 F. Supp. 2d 508, 515 (N.D. Tex. 2003)(where no opposition is filed, the nonmovant's unsworn pleadings are not competent summary judgment evidence and movant's evidence may be accepted as undisputed). *See also Unum Life Ins. Co. of America v. Long,* 227 F. Supp. 2d 609 (N.D. Tex. 2002)("Although the court may not enter a 'default' summary judgment, it may accept evidence submitted by [movant] as undisputed."); *Bookman v. Shubzda*, 945 F. Supp. 999, 1002 (N.D. Tex. 1996)("A summary judgment nonmovant who does not respond to the motion is relegated to [his] unsworn pleadings, which do not constitute summary judgment evidence.").

### Allegations of Plaintiff's Original Petition and Suit for Declaratory Judgment

According to Plaintiff's Original Petition and Suit for Declaratory Judgment (#1-1), beginning in 2010 Tag Team, Inc. and Tieu regularly purchased cars from Mercedes-Benz on behalf of CNJ Auto Finance. Usually a car dealership does not release car titles until funds for the purchase are received, but in Tieu's case, a title clerk released titles to and possession of some vehicles without receiving a draft, but relying instead on Tieu's representation that the funds would be provided upon sale of the cars. The title clerk purportedly committed other unspecified errors and omissions during the title paper preparation, further damaging Mercedes-Benz. After Mercedes-Benz was unable to recover

the vehicles from subsequent buyers, it submitted its claims to Sentry under the Error and Omissions Liability coverage and Commercial Excess/Umbrella coverage.  Mercedes-Benz complains that Sentry wrongfully denied its claims and continues to delay payment of damages to Mercedes-Benz.

Mercedes-Benz brings claims against Sentry for bad faith, breach of insurance contracts, unfair settlement practices (misrepresenting material facts relating to the coverage at issue, failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of the claims, failing to promptly provide Plaintiff with a reasonable explanation of the basis of the policies, and failing within a reasonable time to affirm or deny coverage or submit a reservation of rights) in violation of the Texas Insurance Code, violations of the Texas Deceptive Trade Practices Act ("DTPA"), and prompt payment of a claim under the Texas Insurance Code.

**Sentry's First Amended Motion for Partial Summary Judgment (#11)**

Sentry identifies the following issues to be decided by the Court (#11 at p. 2):

(1) whether Plaintiff has coverage for a first party property loss under the third party liability coverage provided by the Title Error and Omissions coverage and the Excess/Umbrella coverage of the Sentry policy;
(2) whether Plaintiff's extra-contractual claims should be dismissed as a matter of law, since those claims are not available in connection with third party liability coverage, which is the type of coverage at issue; and
(3) whether Sentry is liable for any defense costs incurred by Plaintiff prior to Plaintiff requesting that

-6-

Sentry provide it with a defense.

Sentry recites the following as undisputed facts, supported by references to documents in the record.  Mercedes-Benz is a car dealership licensed by the State of Texas.  It sold 38 vehicles to wholesaler Tieu, and Tieu took delivery of them in exchange for drafts issued to pay for them.  #15-1, pp. 44, 56; #16-1, pp. 26-27; #14-1, pp. 81-119.  The drafts were not honored, causing damage to Mercedes-Benz in the amount of $1,048,425.  #16-1, pp. 17, 26-17.  Mercedes-Benz's title clerk, Sue Baze ("Baze"), released the titles to the vehicles to Tieu before the payments for them were received, and someone else at the car dealership released the vehicles to Tieu, who subsequently never paid for them.  #12-1, p. 32; #16-1, pp. 6, 15, 16, 20-21, 26-27.

When Mercedes-Benz discovered the loss, it made a claim to Sentry, which paid Plaintiff the $100,000 limit of the false pretense coverage of the policy, then paid another $100,000 in entering into a settlement with Plaintiff by which all of Mercedes-Benz's claims against Sentry were released except the following two:  (1) any claim for coverage Mercedes-Benz may have for any claim Plaintiff may have against Baze under the Error and Omission coverage and excess/umbrella policy, and any claim for breach of duty of good faith dealing or Insurance Code claims relating to such; and (2) any claim for defense and indemnity made by Mercedes-Benz about the claims asserted against it by Kay Motors, IPC

Investments, Inc., Ray Memari, and Ivan and Lidiya Krunic in suits filed against Sentry after Mercedes-Benz reported the vehicles as stolen.  #12-1, pp. 32-34, 35-36; #14-1, pp. 76-77.

After Tieu defaulted,[1] Mercedes-Benz sued him and a few other parties in the 400th Judicial District Court, Fort Bend County, Texas, and obtained a judgment in Mercedes-Benz's favor.  Cause No. 10-DCV-180616, *15625 Ft. Bend Ltd. d/b/a Mercedes-Benz of Sugar Land v. Christopher Murfarrige d/b/a CNJ Auto Finance, et al.* (hereafter referred to as "Tieu Lawsuit").  #15-1, pp. 42-91.  Significantly, Mercedes-Benz did not sue Baze.

In the instant suit Mercedes-Benz seeks *inter alia* coverage under the Error and Omissions coverage for the vehicles stolen by Tieu.  Mercedes-Benz asserts that Baze is an insured under the policy:  the "Separation of Insured" provision[2] makes the title clerk a separate insured, so Mercedes-Benz argues that it can bring a claim directly against Sentry under the Error and Omissions coverage.

Sentry contends that Mercedes-Benz's coverage argument was rejected in *Agip Petroleum Co., Inc. v. Gulf Island Fabrication, Inc.*, 3 F. Supp. 2d 754, 758 (S.D. Tex. 1997), *aff'd*, 281 F.3d

---

[1] Sentry notes that Tieu was indicted and pled guilty to conspiracy to commit bank fraud in connection with obtaining Mercedes Benz's vehicles without paying for them.  #11 at p.3 n.1.

[2] #12-1 at p. 28 (First Appendix in Support of Sentry's Motion for Partial Summary Judgment).

1279, No. 00-20487, 2001 WL 1692481 (5th Cir. 2001).   In *Agip*, an insured (Agip) directly sued its own liability insurer for uninsured consequential losses which the insured claimed were caused by contractors also insured under the same liability policy. Agip argued that a severability of interests provision in the policy created separate insurance for each insured, so that Agip could sue under its third-party liability policy for losses that the contractors caused Agip.   Judge Lynn Hughes dismissed the argument and opined that for third-party coverage to attach, the claim must be made by someone not a party to the insurance contract and must be for damage to property that was not the insured's.[3]

---

[3] In *Agip* Judge Hughes wrote about third party liability, 3 F. Supp. 2d at 758,

> A principal insured's claim against secondary insureds is not a third-party claim.   Third-party coverage insures against injury done by an insured to a third party's property.   "[T]he . . . question of insurance coverage under a third-party liability policy . . . turns on whether a third party has sustained injury to . . . its own property."   *Bausch & Lomb, Inc. v. Utica Mut. Ins. Co.*, 330 Md. 758, 783, 625 A.2s 1021, 1033 (Md. 1993).
>
> For third-party coverage to attach, the claim must be made by someone not a party to the insurance and for damage to property other than that insured.   Agip is not a third party; it is the policyholder.   Its claim against the other insureds is for losses to the insured property. The third-party coverage in section two of the policy is for damage to true *third* parties--a non-Agip, non-contractor party.
>
> The contract does not create "internal" third-party liability among the insureds; the severability provisions correctly apply only when the third party is a stranger to the policy.

Here, too, because the Mercedes-Benz was not a third party, but an insured whose claim was against other insureds under the same type of policy for losses to the insured's own property, the third party liability coverage does not apply.  The court observed that third party liability coverage does not create internal third party liability among the insureds and that the severability of interest provision applies only when a suit is brought by a third party who is a stranger to the policy.  Applying the holding of *Agip* to the case here, Sentry argues that the Error and Omissions coverage, which is third party liability coverage, does not apply to Mercedes-Benz's case because Mercedes-Benz is a party to the insurance contract and is seeking damages for a loss of its own. Under *Agip*, a claim brought by one insured under a liability policy against another insured under the same policy is not covered by third party coverage.  Thus Sentry urges that the Court should grant summary judgment in its favor, dismissing Plaintiff's claims under the Error and Omissions coverage.[4]

---

Similar to the Separation of Interests provision in the instant case, the severability-of-interests provision in *Agip* states, "This insurance shall be deemed to be a separate insurance in respect of each Assured hereunder (as if a separate policy had been issued to each)." 3 F. Supp. 2d at 757.

[4] This Court notes that while observing that *Agip* "is the only reported opinion addressing this argument," the district court in *Norfolk Shipbuilding & Drydock Corp. v. Seabulk Transmarine Partnership, Ltd.*, Civ. A. 93-1312 C/W, 2000 WL 1477228, at *4 (E.D. La. Oct. 4, 2000)(Barrigan, J.), chose to follow it, and was affirmed by the Fifth Circuit, 274 F.3d 249 (5th Cir. 2001).

Even if *Agip* does not apply here, Mercedes-Benz's claims directly against Sentry under the Error and Omissions coverage should still be dismissed as a matter of law, according to Sentry, because Mercedes-Benz lacks standing since it never sued Baze and did not obtain a judgment against her.  Because Texas is not a direct action state, a tort claimant may not directly sue a tortfeasor's liability insurer until the insured tortfeasor is adjudged liable to the claimant.  *Jones v. CGU Ins. Co.*, 78 S.W. 3d 626, 629 (Tex. App.--Austin 2002, no pet.)("Under Texas law, a tort plaintiff generally has no standing to join a tortfeasor's liability insurer directly in the tort action . . . until the insured-tortfeasor is adjudged liable to the tort claimant."); *Angus Chemical Co. v. IMC Fertilizer, Inc.*, 939 S.W. 2d 138, 138 (Tex. 1997)(As a general rule, "an injured party cannot sue the tortfeasor's insurer directly until the tortfeasor's liability has been finally determined by agreement or judgment), *citing Great Am. Ins. Co. v. Murray*, 437 S.W. 2d 264, 265 (Tex. 1939); *State Farm County Mutual In. Co. of Texas v. Ollis*, 768 S.W. 2d 722, 723 (Tex.1989)(*Great Am. Ins.* held "that a party injured by an insured is a third party beneficiary of a liability insurance policy" . . . "but he cannot enforce the policy directly against the insurer until it has been established, by judgment or agreement, that the insured has a legal obligation to pay damages to the injured party.").  The Error and Omissions coverage states that no action

may be brought against Sentry until the insured's obligation to pay has been finally determined by judgment after trial.  #12-1, pp. 26-27.  The summary judgment evidence is undisputed that Mercedes-Benz has never sued Baze, no less obtained a judgment against her. #16-1, pp. 19, 28-29.

Sentry emphasizes that first party property insurance and third party liability insurance are quite different.  *Highlands Ins. Co. v. City of Galveston ex rel. Bd. of Trustees of Galveston Wharves*, 721 S.W. 2d 469, 471 (Tex. App.--Houston [14[th] Dist.] 1986, writ ref'd n.r.e.)("Many policies involve both [property insurance and liability insurance].  A policy of property insurance is a personal contract for indemnity for the insurable interest possessed by the insured at the time of the issuance of the policy, and also at the time of the loss.  Property insurance policies are 'intended solely to indemnify the insured for his actual monetary loss by the occurrence of the disaster; unless the insured has sustained an actual loss, the insurer has no liability.'  Liability policies, on the other hand, insure against loss arising out of legal liability, usually based upon the assured's negligence. Whether or not the policies before us are property policies, liability policies, or both, is to be determined from a reading of the policies themselves in their entirety. [citations omitted]"); *Warrilow v. Norrell*, 791 S.W. 2d 515, 527 n.2 (Tex. App.--Corpus Christi 1989, writ denied)("In first-party insurance coverage, the

insured is covered for his own loss.  In third-party insurance coverage, the insured is covered for his liability to another for their loss."); *Rx.Com Inc. v. Hartford Fire Ins. Co.*, 364 F. Supp. 2d 609, 615-16 (S.D. Tex. 2005)("The Texas Supreme Court defines a 'first-party claim' as 'one in which an insured seeks recovery for the insured's own loss.  By contrast, in a third-party claim, 'an insured seeks coverage for injuries to a third party.'"), *citing Universe Life Ins. v. Giles*, 950 S.W. 2d 48, 53 n.2 (Tex. 1997); *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W. 3d 1, 17 (Tex. 2007)(holding that a first party claim is stated when an insured seeks recovery for the insured's own loss, whereas a third party claim is stated when an insured seeks coverage for injuries to a third party.).  In other words, liability insurance coverage applies to claims by third parties against the insured, not to claims in which the insured seeks coverage for damage to its own property.

Sentry insists that here Mercedes-Benz clearly seeks recovery for its own loss, i.e., a first party loss for vehicles sold and transferred by it for which it never received payment.  Thus there is no coverage under the Error and Omissions coverage because that coverage is third party liability coverage.  The insuring provision reads,

COVERAGE D. TITLE ERROR AND OMISSIONS

1.  INSURING AGREEMENT

A.  WE WILL PAY SUMS AN "INSURED" LEGALLY MUST
PAY AS "DAMAGES" ARISING FROM NEGLIGENT ERROR
OR OMISSIONS COMMITTED BY AN "INSURED" DURING
"TITLE PAPER PREPARATION" IN THE CONDUCT OF
YOUR BUSINESS.    HOWEVER, THIS ADDITIONAL
INSURANCE APPLIES ONLY IF THE LIENHOLDER(S) OR
LEGAL OWNER(S) MAKE CLAIM OR BRING "SUIT"
AGAINST THE "INSURED" FOR "DAMAGES" RESULTING
FROM THE "INSURED'S" ERROR OR OMISSION IN THE
TITLE REGISTRATION.

B.  THE AMOUNT WE WILL PAY FOR "DAMAGES" IS
LIMITED AS DESCRIBED IN SECTION III--LIMITS OF
INSURANCE.

C.  WE HAVE THE RIGHT AND DUTY TO INVESTIGATE
AND TO DEFEND OR SETTLE ANY CLAIM OR "SUIT"
FOR "DAMAGES".   HOWEVER, WE HAVE NO DUTY TO
INVESTIGATE, DEFEND OR SETTLE A CLAIM OR
"SUIT" NOT COVERED BY THIS INSURANCE.    OUR
PAYMENT OF THE LIMIT OF INSURANCE ENDS OUR
DUTY TO INVESTIGATE, DEFEND OR SETTLE.

#12-1, p. 21.[5]

---

[5] To support its opposition to the motion for partial summary
judgment, Mercedes Benz quotes the passage following this one (#12-
1, pp. 12-22):

2.  EXCLUSIONS

THIS COVERAGE DOES NOT APPLY TO:

A.   "BODILY INJURY", "PROPERTY DAMAGE" OR
"PERSONAL AND ADVERTISING INJURY";

B.  LOSS ARISING OUT OF:

(1)    DISHONEST,    MALICIOUS,
FRAUDULENT, CRIMINAL, OR INTENTIONAL
ACTS OR OMISSIONS; HOWEVER, THIS
EXCLUSION DOES NOT APPLY TO YOU IF
SUCH ACT OR OMISSION WAS COMMITTED
BY YOUR "EMPLOYEE" (OTHER THAN A
PARTNER, DIRECTOR, OR "EXECUTIVE
OFFICER"), WITHOUT YOUR DIRECTION OR
YOUR KNOWLEDGE; OR

-14-

Under Texas law an insuring provision requiring the insurer to pay "sums an insured legally must pay as damages" constitutes third party liability coverage. *Howard v. Burlington Ins. Co.*, 347 S.W. 3d 783, 791 (Tex. App.--Dallas 2011, no pet.); *AccuFleet, Inc. v. Hartford Fire Ins. Co.*, 322 S.W. 3d 264, 270 (Tex. App.--Houston [1st Dist] 2009, no pet.); *Gemini Ins. C. v. Hayssam Allaov*, Civ. A. No. H-10-3413, 2011 WL 3323120, at *7 (S.D. Tex. Aug. 2, 2011).

Because Mercedes-Benz, which is a third party claimant for this claim, has not obtained a judgment against Baze, it has no standing to sue Sentry directly under the Error and Omissions coverage, and Sentry is entitled to partial summary judgment dismissing Mercedes-Benz's claims for coverage under the Error and Omissions coverage.

Sentry also argues that Mercedes-Benz's claim for coverage for its loss under its excess/umbrella coverage also fails for several reasons. The excess/umbrella coverage requires Sentry to pay on behalf of the insured "the ultimate net loss" in excess of the "underlying insurance" (#12-1, pp. 52, 57) i.e., "the total sum . . . that an insured becomes legally obligated to pay as damages by reason of settlement or judgments or any arbitration or other alternative dispute method entered into with our consent" (#13-1, p. 15). Thus the excess and umbrella coverage, like the Error and

---

(2) LIABILITY OF OTHERS ASSUMED BY ANY "INSURED" UNDER A CONTRACTOR AGREEMENT.

-15-

Omissions coverage, provides that no suit can be brought unless there is a final judgment against an insured or an agreed settlement and release of liability signed in writing by the insured, Sentry, and the claimant or claimant's legal counsel. #13-1, p. 4).  Baze has not been sued, while the only settlement reached in this litigation was between Sentry and Mercedes-Benz, to which Baze was not a party.  Thus Mercedes-Benz lacks standing to sue Sentry Directly under the excess or umbrella coverage.  Nor would excess coverage exist because the coverage expressly excludes any error in title paper preparation.  #12-1, pp. 53, 56 ("THIS COVERAGE DOES NOT APPLY TO . . . TITLE PAPER PREPARATION . . . LIABILITY ARISING OUT OF ANY NEGLIGENT ACT, OMISSION OR OTHER ERROR IN 'TITLE PAPER PREPARATION'.").

Regarding Mercedes-Benz's extra-contractual claims, including breach of duty of good faith and fair dealing, unfair settlement practices under Section 541.060 of the Texas Insurance Code, and claims under the Deceptive Trade Practices Act, Sentry argues they have no merit under Texas common or statutory law.  A third party liability insurer's common law duty is limited to that set forth in *G.A. Stowers Furniture Co. v. Am. Indemnity Co.*, 15 S.W. 2d 544, 547 (Tex. Comm'n App. 1919, holding approved) to protect the insured by accepting a reasonable settlement offer within the policy limit that an ordinarily prudent insurer would accept in view of the likelihood and degree of the insured's potential

exposure to an excess judgment. The same is true of its statutory duty under the Texas Insurance Code to accept a reasonable settlement offer. *Racor Int'l, Inc. v. Nat'l Union Fire Ins. Co.*, 77 S.W. 3d 253, 260-62 (Tex. 2002)("There is nothing to indicate that the Legislature had in mind any standard other than the familiar *Stowers* standard" in enacting § 541.060(a)(2)(A); to activate an insurer's duty under that statute, the claimant must make a settlement demand within policy limits with terms that an ordinarily prudent insurer would accept; an insurer has no contractual or implied duty to settle a claim that is not covered under the policy). Sentry contends that no such claims exist now. There must be a final judgment against the insured in excess of policy limits before an insured can sue its insurer under *Stowers*. *Street v. Honorable Second Court of Appeals*, 756 S.W. 2d 299, 301 (Tex. 1988, orig. proceeding)(holding that before an insured can sue its insurer on a *Stowers* cause of action, there must be a final judgment against the insured in excess of policy limits). Because no final judgment has been obtained against Mercedes-Benz, it cannot bring any extra-contractual cause of action against Sentry regarding Sentry's failure to defend Mercedes-Benz in lawsuits filed against it. Furthermore, Mercedes-Benz did not reserve such claims in the release executed by it so that such claims would be subject to the defense of release.

Mercedes-Benz's other extra-contractual claims would be based

-17-

on claims it is asserting under the Error and Omissions and Excess/Umbrella coverages. Because Mercedes-Benz has the status of a third party claimant to such claims, Sentry, as a liability insurer, owes no duties to Mercedes-Benz. *Allstate Ins. Co. v. Watson*, 876 S.W. 2d 145, 149-50 (Tex. 1994)(holding that insurers do not owe third party claimants statutory first party duties, such as good faith and fair dealing, under the insurance code or for insurance based DTPA actions)[6]; *Progressive County Mutual Ins. Co. V. Boyd*, 177 S.W. 3d 919, 922 (Tex. 2005)(same); *Transportation Ins. Co. v. Faircloth*, 898 S.W. 2d 269, 279-80 (Tex. 1995)(extending *Watson* and holding that an insurer does not owe a third party a duty of good faith and fair dealing)("An insured's interests are adverse to third-party claimants. . . . For policy reasons we do not require insurance companies to perform duties for third-party claimants that are 'coextensive and conflicting' with the duties they owe their insureds. Owing such duties to third parties would 'necessarily compromise the duties the insurer owes to its insured.'")(*citing Watson*).

---

[6] Unlike the common law duty that an insurance company owes to its insured based on the special relationship arising out of the insurance contract (*Aranda v. Insurance Co. of N. America*, 748 S.W. 2d 210, 212 (Tex. 1998), the Texas Supreme Court in *Watson*, 876 S.W. 2d at 149, observed,

A third party claimant has no contract with the insurer or the insured, has not paid any premiums, has no legal relationship with the insurer, and in short, has no basis upon which to expect or demand the benefit of . . . extra-contractual obligations imposed on insurers.

Sentry finds *Rumley v. Allstate Indemnity Co.*, 924 S.W. 2d 448, 450 (Tex. App.--Beaumont 1996, no writ), on point with the instant suit.[7] It, like the other cases cited, demonstrates that dismissal of Mercedes-Benz's claims for breach of duty of good faith and fair dealing, unfair settlement practices under Section 541.060 of the Texas Insurance Code, and claims under the DTPA is mandated.

Sentry also cites as applicable to the instant suit *Ohio*

---

[7] In *Rumley*, a wife and her husband were both named insureds under a policy for both liability and personal injury and the premiums were paid with community funds, so the wife had a contractual relationship with Allstate. When the husband, while driving with his wife, negligently crashed his car and injured the wife, the insurer paid personal-injury benefits to the wife but denied her liability coverage. The wife sued the insurer for breach of duty of good faith and fair dealing and violations of the Insurance Code and the DTPA. The insurer settled the wife's claims against the husband, but moved for summary judgment on her claims against it, arguing that she was a third-party claimant to whom the insurer did not owe such a duty. The court granted the summary judgment. Observing that "[t]he duty to act in good faith does not arise in every situation where there is a contractual relationship between the claimant and the insurer," 924 S.W. 2d 449, the appellate court in affirming the district court explained, *id.* at 450,

> Although Mrs. Rumley had a relationship with Allstate, just as she had a relationship with Mr. Rumley, in the context of her claim based on Mr. Rumley's negligence she was antagonistic to both insurer and spouse, and it cannot be said she dared rely upon Allstate's good faith any more than any other injured party would. While Mrs. Rumley might ultimately benefit from a bad faith claim which Mr. Rumley might pursue against Allstate, that duty is owed to Wilbrun Rumley, and *not* to Joyce Rumley. As a third-party claimant, Mrs. Rumley had no standing to assert extra-contractual and statutory claims against appellees for the denial and delay in the payment of her claim.

-19-

*Casualty Ins. Co. v. Time Warner Entertainment Co., L.P.*, 244 S.W. 3d 885, 888-89 (Tex. App.--Dallas 2008, rev. denied)(Noting that the roots of the no-direct-action rule appear to give rise to the no-action clause frequently found in liability insurance policies and holding that a contractor named as an additional insured on its subcontractor's liability insurance policy lacked standing to bring a direct action against the subcontractor's liability insurer or to seek a declaration of coverage obligations before the subcontractor's liability had been established by judgment or settlement). The court found that the contractor had the status of a third party claimant and was therefore prohibited from the same direct action as any other third party claimant would be. Sentry's Error and Omissions coverage contains such a no-action clause. Because Mercedes Benz has not obtained a judgment against Baze, its claims against Sentry under that coverage must be dismissed.

Finally, Mercedes-Benz seeks to recover defense costs because after reporting the vehicles as stolen, it was sued by IPC Investments, Ivan and Lidiya Krunic, Kay Motors Company, and Ray Memari. #15-1, pp. 6-37. Mercedes-Benz's Petition reflects that it disagrees with Sentry about when the defense costs become covered. #1-1, p.10. Mercedes-Benz's attorney first requested Sentry to provide it a defense in an April 5, 2011 letter. #15-1, p. 2. Sentry's attorney received the letter on April 6, 2011. #14-1, pp. 113-14. Under Texas law a liability insurer has no duty

to defend or indemnify an insured unless and until the insured provides notice to the insurer by submitting the suit documents and requests that the insurer provide it with a defense. *Nat'l Union Fire Ins. Co. v. Crocker*, 246 S.W. 3d 603, 610 (Tex. 2008). The insurer does not owe any fees or defense costs incurred before the lawsuit is tendered. *E&L Chipping Co., Inc. v. Hanover Ins. Co.*, 962 S.W. 2d 272, 278 (Tex. App--Beaumont 1998, no pet.)("[A] condition precedent to the duty to defend lawsuits served upon the insured is that the insured must promptly provide written notice of the suit and must immediately forward copies of the suit with citations."). Sentry's liability coverage encompasses these same requirements. #13-1, pp. 100-01. Because the undisputed summary judgment evidence shows that Sentry first received a request from Mercedes-Benz to provide it with a defense on April 6. 2011, Sentry is not liable to Mercedes-Benz for any defense costs or attorney's fees incurred by Mercedes-Benz before April 6, 2011.

Sentry points out that if the Court grants its first motion for partial summary judgment, the only remaining issue would be the amount, if any, of attorney's fee defense costs incurred after April 6, 2011 to which Plaintiff would be entitled for the suits against it.

### Mercedes-Benz's Response (#17)[8]

Observing well established law that general contract principles apply to the construction and interpretation of insurance policies, Mercedes-Benz notes that when the language in an insurance policy is subject to more than one reasonable construction, it is viewed as patently ambiguous and the terms are construed strictly against the insurer and liberally in favor of the insured. *Barnett v. Aetna Life Ins. Co.*, 723 S.W. 2d 663, 666 (Tex. 1987). Whether a policy is ambiguous is a question of law for the court to resolve. *Koral Industries, Inc. v. Security-Connecticut Life Ins. Co.*, 788 S.W. 2d 136, 150 (Tex. App.--Dallas 1990, writ denied), *citing R&P Enterprises v. LaGuarta, Gavrel & Kirk, Inc.*, 596 S.W. 2d 517, 518 (Tex. 1980).

A court will enforce an exception or exclusionary clause[9] of a policy if it is clear and unambiguous. *Equitable General Ins. Co. v. Williams*,620 S.W. 2d 608 (Tex. Civ. App.-Dallas 1981, writ re4f'd n.r.e.). The insurer bears the burden of proof on any avoidance or affirmative defense that must be pleaded under the Texas Rules of Civil Procedure and to any exception to coverage claimed by the insurer. Tex. Ins. Code Ann. § 21.58 (Vernon's Supp. 1992). Because the insurer chooses the language and terms of

---

[8] A substantial part of the response argued for a continuance, which was subsequently denied (#23). Thus the Court does not address those matters.

[9] Set footnote 5.

the insurance policy, if the exclusion or exception is unclear, ambiguous, or subject to multiple interpretations, the court must apply even more stringent construction and adopt the construction of the insured as long as that construction is not unreasonable, even if the insurer's construction is more reasonable or a more nearly accurate reflection of the parties' intent. *Barnett v. Aetna Life Ins. Co.*, 723 S.W. 2d 663, 666 (Tex. 1987), *citing Glover v. Nat'l Ins. Underwriters*, 545 S.W.2d 755, 763 (Tex. 1977), and *Continental Cas. Co. v. Warren*, 254 S.W. 2d 762, 763 (Tex. 1953).

In addition to the exclusions quoted in footnote 5 of this Opinion and Order, Mercedes-Benz focuses on the language of the following provisions of the Error and Omissions coverage:

SECTION II--WHO IS AN INSURED

1.   COVERAGES A THROUGH D

THE FOLLOWING ARE "INSUREDS" FOR THESE COVERAGES:

A.   YOU;

B. ANY OF YOUR DIRECTORS, OFFICERS OR "EMPLOYEE'S" [*sic*], BUT ONLY WITH RESPECT TO THE CONDUCT OF YOUR BUSINESS.

C.   IF YOU ARE A PARTNERSHIP OR JOINT VENTURE, ANY PARTNER OR MEMBER THEREOF, BUT ONLY WITH RESPECT TO THEIR LIABILITY FOR THE CONDUCT OF YOUR BUSINESS.

D.   EXCEPT WITH RESPECT TO OUR LIMITS OF INSURANCE, THIS INSURANCE APPLIES SEPARATELY TO EACH "INSURED".

#12-1, p. 24.

SECTION V--CONDITIONS

-23-

THE FOLLOWING CONDITIONS APPLY IN ADDITION TO THE COMMON
POLICY CONDITIONS:

1.   LOSS CONDITIONS . . . .

     B.   LEGAL ACTION AGAINST US

     NO ONE MAY BRING A LEGAL ACTION AGAINST US
     UNDER THIS COVERAGE FORM UNTIL:

          (1) THERE HAS BEEN FULL COMPLIANCE
          WITH ALL THE TERMS OF THIS COVERAGE
          FORM; AND

          (2) THE "INSURED'S" OBLIGATION TO
          PAY HAS FINALLY BEEN DETERMINED BY
          JUDGMENT AFTER TRIAL.   NO ONE HAS
          THE RIGHT UNDER THIS POLICY TO BRING
          US INTO AN ACTION TO DETERMINE THE
          "INSURED'S" LIABILITY. . . .

2.   GENERAL CONDITIONS . . . .

     H.   SEPARATION OF INSURED

          EXCEPT WITH RESPECT TO THE LIMITS OF
          INSURANCE, AND ANY RIGHTS OR DUTIES
          SPECIFICALLY ASSIGNED IN THIS POLICY
          TO THE FIRST NAMED, THIS INSURANCE
          APPLIES:

          (1) AS IF EACH NAMED INSURED WERE
          THE ONLY NAMED INSURED; AND

          (2) SEPARATELY TO EACH "INSURED"
          AGAINST WHOM CLAIM IS MADE OR "SUIT"
          IS BROUGHT.

*Id.* at pp. 26-28.

The plain language of the coverage provisions evidences first

party coverage for the insured, Mercedes-Benz insists.  Under these

provisions, Mercedes-Benz and Sue Baze are "insureds."   The

"Separation of Insured Provision," according to Mercedes-Benz,

mandates that the Insurer respond to a claim brought by one insured against another insured.    Thus the coverage provision under Coverage D(1)(a) should read as follows (#17 at p. 7):

> [Sentry] will pay sums [Mercedes-Benz] legally must pay as "damages" arising from negligent errors or omissions committed by [Sue Baze] during "title paper preparation" in the conduct of [Mercedes-Benz's] business.  However, this additional insurance applies only if [Mercedes Benz] or [Mercedes-Benz] make claim or bring "suit" against the [Sue Baze] for "damages" resulting from the [Sue Baze's] error or omission in the title registration.

Mercedes-Benz highlights that the coverage provision under Section D(1)(a) does not require the insured to file a lawsuit; it specifically states that the Insurer must pay, and the additional insurance applies only if the insured makes claim **or** brings suit against the other insured.  #12-1, p. 21.  Mercedes-Benz contends that Section D(1)(a) conflicts with Section V(1)(B), creating an ambiguity that must be liberally construed in favor of the insured, Mercedes-Benz.  Nowhere do the policies require Mercedes-Benz to bring suit against Baze.

Rather, the insured's right to bring a claim instead of filing suit is evident throughout the policy.  In addition to Section D(1)(A) and V(2)(H)(2), it is found in

SECTION III-LIMITS OF INSURANCE

1.  FOR THE COVERAGES PROVIDED, THE LIMITS OF INSURANCE SHOWN IN THE DECLARATIONS FIX THE MOST WE WILL PAY, REGARDLESS OF THE NUMBER OF:

A.  "INSUREDS";

B.    ERROR  OR  OMISSIONS  WHICH  RESULT  IN

"DAMAGES";

C.   BENEFITS  INCLUDED  IN  YOUR  "EMPLOYEE
BENEFITS";

D.  CLAIMS MADE OR "SUITS" BROUGHT; OR

E.  PERSONS OR ORGANIZATIONS MAKING CLAIMS OR
BRINGING "SUITS".

#12-1, P. 24.

Regarding Sentry's reliance on *Agip*, Mercedes-Benz insists that it is not making a third party claim, but a first party claim. In addition because *Agip* did not involve any reliance on a "Separation of Insureds" provision, it does not apply here. Mercedes also attempts to distinguish the three cases cited by Sentry for the proposition that coverage obligating the insurer to pay "sums an insured legally must pay as damages" constitutes third party liability coverage.

Sentry declares Mercedes-Benz's attempts to distinguish the cases relied on by Sentry "meritless" for reasons indicated in the footnotes below following Mercedes-Benz's arguments.

For example, in *Howard v. Burlington Ins. Co.*, 347 S.W. 3d 783, 791 (Tex. App.--Dallas 2011, no pet.), the court's statement that the plain language of the policy (stating that the insurer "will pay all sums an 'insured' must pay as damages because of 'bodily injury' or 'property damage to which this insurance applies caused by an 'accident' and resulting from 'garage operations'") indicated that it was a third party policy.  Mercedes-Benz argues

*Howard* is inapplicable because here the Sentry policy excluded bodily injury and property damage from coverage and focuses on first party type claims. Moreover, Mercedes-Benz argues, *Howard* also did not involve reliance on a "Separation of Insureds" provision.[10]

---

[10] Sentry replies that Mercedes-Benz's argument is erroneous. The exclusion of bodily injury or property damage from the Error and Omissions coverage serves only to identify the type of damages legally owed by an insured to a third party that are covered. The language in the Error and Omission coverage that creates third party liability coverage, and show that it does not provide first party property coverage, is the statement that Sentry will pay those sums "an insured must legally pay as damages." #12-1, p. 21. The Court agrees. Sentry also quotes from *American National Fire Ins. Co. v. Hammer Trucking, Inc.*, No. 2-04-327-CV, 2006 WL 3247906, *2 n.16 (Tex. App.--Fort Worth Nov. 9, 2006), in turn quoting from a noted insurance expert, Allan D. Windt, *Insurance Claims & Disputes* § 6.5 (4th ed. 20010):

> There are two general categories of insurance policies: third-party liability policies and first-party policies. First-party insurance is insurance covering a loss that the insured itself might incur. Such insurance includes theft, fire, health, disability and life insurance policies, pursuant to which the insurer covenants to reimburse the insured for losses directly incurred by the insured.
> . . . .
> By contrast, liability insurance affords coverage for amounts owed by the insured to third parties . . . . The insurer covenants to indemnify the insured only for sums that the insured becomes legally obligated to pay to others.

Here, the benefits payable under the Error and Omissions coverage are damages for which an insured actually becomes "legally obligated to pay" due to negligence in title paper preparation. Sentry further explains that "bodily injury" and "property damage" are excluded from the Error and Omission coverage because they are the type of damages covered by a commercial general liability ("CGL") policy. *Harper v. Gulf Ins. Co.*, No. 01-CV-201-J, 2002 WL 32290984, at *1 n.1 (D. Wyo. Dec. 20, 2002)(noting that

-27-

Mercedes further argues that in *AccuFleet, Inc. v. Hartford Fire Ins. Co.*, 322 S.W. 3d 264, 270 (Tex. App.--Houston [1st Dist] 2009, no pet.), and *Gemini Ins. C. v. Hayssam Allaov*, Civ. A. No. H-10-3413, 2011 WL 3323120, at *7 (S.D. Tex. Aug. 2, 2011), the courts considered whether a third party fell within the definition of an "insured."[11]   Here, in contrast, it is undisputed that Mercedes-Benz is an "insured."   Nor was there a "Separation of Insureds" provision in either case.   Moreover Mercedes-Benz seeks to recover for its own loss, a first party claim.

---

a CGL policy is one "usually obtained by a business to cover damages the insured becomes legally obligated to pay because of bodily injury or property damage), *citing inter alia Black's Law Dictionary* 809 (7th ed. 1999); *Aecon Buildings, Inc. v. Zurich North America*, No. C07-832MJP, 2008 WL 3927797, at *1 n.3 (W.D. Wash. Aug. 21, 2008)(A CGL policy "is third-party policy insurance that covers damages that the insured becomes legally obligated to pay because of bodily injury or property damage occurring during the policy period").

Because Mercedes-Benz has not obtained a judgment finding Baze legally obligated to pay Mercedes-Benz damages for negligence in title paper preparation, Sentry maintains that no amount would be owed by Sentry under the Error and Omissions coverage.   The Court agrees.

[11] Again Sentry disagrees.   In *Gemini* an insured (AAC) sued its insurer, Gemini, which had issued liability and garagekeepers coverage.   AAC sued for damage to its property.   The court concluded that such damage was not covered because the coverage provided by the policy was solely third party liability coverage and AAC was claiming damage to its own property, not money AAC was legally obligated to pay as damages.   In *Accufleet*, the court also found the policy was a third party liability coverage, a duty to defend its insured in an underlying lawsuit, which is distinct from its duty to indemnify, but no duty to indemnify.

Sentry explains that it cited *Accufleet*, *Gemini*, and *Howard* because all three involved insurance provisions obligating the insurer to "pay sums an insured legally must pay as damages," which clearly indicated only third party liability coverage.

*Citing King v. Dallas Fire Ins. Co.,* 85 S.W. 3d 185 (Tex. 2002) to support its argument that the insuring provision of the Error and Omissions coverage provides first party coverage, Mercedes-Benz notes that in a case with multiple insureds on a liability policy and a separation of insureds provision ("except with respect to the limits of insurance, and any rights or duties specifically assigned in this Coverage Part to the first named insured, this insurance applies: a. as if each named insured were the only named insureds; and b. separately to each insured against whom a claim is made or 'suit' is brought."), the Texas Supreme Court held that whether the actions of the insured constituted an "occurrence" to trigger coverage should be determined from the eyes of the insured.   It concluded that the separation of insureds provision should be used to interpret the insurance agreement, not just the exclusions.

### Sentry's Reply (#19)

Sentry maintains that the *King* case does not apply here.   It involved a third party, who was not an insured under the liability policy and who was intentionally assaulted by an insured's employee; it did not involve one insured under a liability policy trying to recover its own loss from another insured under the same policy, as *Agip* did.[12]   In *Agip*, 3 F. Supp. 2d at 758, the court

---

[12] This Court observes that in an underlying suit the victim then sued the employer (Carlyle King, sole proprietor of the Tiedown Construction Company, the insured under the policy) as

held that the third party liability coverage was for damage suffered by a true third party, not an insured under the same liability policy.    It also noted that third party liability coverage does not create internal third party liability among the insureds and that the severability provision applies only when suit is brought by a third party who is a stranger to the policy.

Furthermore, Sentry notes that under Texas law, the separation of insureds clause, or severability of interests clause ("each insured against whom a claim is brought is treated as if it was the only insured under the policy"), relied upon by Mercedes-Benz,

--------------------------------------------------

liable under a *respondeat superior* theory and directly liable for negligent hiring, training and supervision of the assaulting employee, Carlos Lopez.  Dallas Fire refused to defend King because it decided that the suit did not allege an "occurrence," or accident, within the meaning of the insurance policy because the employee's actions were intentional (85 S.W. 3d at 187) and argued that the separation of insureds provision did "not affect the case because it was "an occurrence based policy that requires us to focus on the injury causing event.'" 85 S.W. 3d at 189.  King, in turn, filed a declaratory judgment seeking a declaration that its alleged negligent hiring, training and supervision constituted an "occurrence" under the policy and triggered Dallas Fire's duty to defend King.   The Texas Supreme Court held that there was an "occurrence," which invoked the insurer's duty to defend because "the [intended-injury] exclusionary provision expressly stated that whether an occurrence was an accident [or intentional] depends on the insured's standpoint." 85 S.W. 2d at 189.  Noting that courts are split about whether an employer's negligent hiring, training and supervision constitute an "occurrence" when its employee's intentional conduct caused the alleged injury (85 S.W. 3d at 190), the Texas Supreme Court concluded that "whether one who contributes to an injury is negligent is an inquiry independent from whether another who directly causes the injury acted intentionally"; it found that the better approach was holding that the actor's intent is not imputed to the insured in determining whether there was an occurrence."  85 S.W. 3d at 191-92.

serves to provide coverage to an "innocent" insured who did not
commit the conduct excluded by the policy. *Bituminous Casualty
Corp. v. Maxey*, 110 S.W. 3d 203, 210 (Tex. App.--Houston [1st Dist.
2003, rev. denied)("The severability clause serves to provide
coverage when there is an 'innocent' insured who did not commit the
conduct excluded by the policy."), *citing State Farm Fire & Cas.
Ins. Co. v. Keegan*, 209 F.3d 767, 769 (5th Cir. 2009). Sentry notes
that is the reason why the named insured in *King* had coverage as
the insured who did not intentionally assault the third party who
brought suit.

Sentry also highlights the fact that Mercedes-Benz has failed
to respond to the summary judgment motion regarding the
excess/umbrella coverage, i.e., that it is third party liability
coverage and that Mercedes Benz has not obtained the required
judgment or settlement to provide it with standing to sue Sentry
directly. Sentry therefore requests summary judgment on Mercedes-
Benz's claims under that coverage.

Nor, argues Sentry, did Mercedes-Benz submit anything in
response to the request for summary judgment on the extra
contractual claims (breach of good faith and fair dealing, unfair
settlement practices under Section 541.060 of the Texas Insurance
Code and under the DTPA). All these claims should be dismissed
because both the Error and Omissions coverage and the
excess/umbrella coverage clearly provide third party liability

coverage and the claims are not viable.

**Sentry's Second Motion for Partial Summary Judgment (#20)**

Sentry asks for summary judgment on Mercedes-Benz's two claims that were not addressed in Sentry's first motion:  (1) defense costs in connection with lawsuits filed against Mercedes-Benz by IPC Investments, Ivan and Lidiya Krunic, Kay Motors Company, and Ray Memari; and (2) recovery under Chapter 542.051, *et seq*. of the Texas Insurance Code.

Regarding defense costs, Sentry first argues that because Plaintiff failed to provide any of the discovery required of it concerning these claims and because the deadlines for such expired long ago, Sentry is entitled to summary judgment on the whole lawsuit.  The following facts are undisputed.  The deadline for Mercedes-Benz to designate expert witnesses and provide expert reports was February 4, 2012 (#7).  As evidenced by an affidavit from Sentry's counsel, Mercedes-Benz never served its expert disclosures as required by the Court's June 4, 2012 Scheduling Order (#21-1, pp. 1-2).  Mercedes-Benz also failed to serve its Initial Disclosures as mandated by the Federal Rule of Civil Procedure 26 (#21-1, pp. 1-2).  Mercedes-Benz's failure to provide any discovery supporting its claim for defense costs, for which the deadlines have all expired, requires dismissal of those claims for reasons indicated *infra*.

For a party to recover attorney's fees it must produce

-32-

supporting expert testimony. *Twin City Fire Ins. Co. v. Vega-Garcia*, 223 S.W. 3d 762, 770 (Tex. App.-Dallas 2007, rev. denied)("The issue of reasonableness and necessity of attorney's fees requires expert testimony."); *Woollett v. Matyastik*, 23 S.W. 3d 48, 52 (Tex. App.--Austin 2000, pet. denied)("Determining a reasonable attorney's fee is a question of fact and the fee award must be supported by competent evidence"; holding that a layman's testimony concerning fees was no evidence on fee issue because expert testimony is required to support an award of fees); *Lesikar v. Rappeport*, 33 S.W. 3d 282, 307-08 (Tex. App.--Texarkana 2000, pet. denied)(fee award reversed on appeal because plaintiff failed to offer expert testimony that the attorney's fees were reasonable and necessary).

Moreover the failure to properly and timely designate an expert witness on a fee award bars recovery of such fees under Texas law. *E.F. Hutton & Co., Inc. v. Youngblood*, 741 S.W. 2d 363, 364 (Tex. 1987)(*per curiam*)(reversing a fee award where plaintiff failed to identify an expert witness on the reasonableness of the fee claim in answering interrogators and failed to show good cause for that failure).

Here Mercedes-Benz failed to designate any witnesses to provide expert testimony on fees purportedly owed to Mercedes-Benz in connection with its defense of lawsuits brought against it by IPC Investments, Ivan and Lidiya Krunic, Kay Motors Company, and

Ray Memari.  Sentry notes that the same result would occur under Federal Rule of Civil Procedure 37: a party who fails to provide information or identify a witness as required by Rule 26(a) or (e) is not permitted to use that information or witness to supply evidence on a motion, hearing or trial.  *Cutler v. Louisville Ladder, Inc.*, Civ. Case No. 4:10-4684, 2012 WL 2994271, at *4-7 (S.D. Tex. July 20, 2012).  Sentry urges that Mercedes-Benz's claim for defense costs should be dismissed.

Sentry further points out that in the suits brought by IPC Investments and Ray Memari, Mercedes-Benz filed a motion for summary judgment on March 11, 2011, before Mercedes-Benz requested a defense for those suits from Sentry on April 6, 2011.  #21-1, pp. 3-17; #14-1, pp. 113-14.  That motion for summary judgment was granted on April 18, 2011.  Sentry argues that by the time Plaintiff requested Sentry to provide a defense in these suits, there was nothing left for Sentry to do besides wait for the court's ruling.  Thus the claim for defense costs is frivolous.

To prevail on a claim under Chapter 542.051 *et seq.*, of the Texas Insurance Code[13] requiring prompt payment of a claim, Mercedes-Benz must establish (1) a claim under an insurance policy, (2) the insurer's liability for that claim, and (3) the insurer's failure to follow one or more sections of the statute with respect to the claim.  *GuideOne Lloyds Ins. Co. v. First Baptist Church of*

---

[13] Formerly Art. 21.55 of the Texas Insurance Code.

*Bedford*, 268 S.W. 3d 822, 830-31 (Tex. App.--Fort Worth 2008, no pet.), *citing Allstate Ins. Co. v. Bonner*, 51 S.W. 3d 289, 291 (Tex. 2001), *judgment withdrawn and superseded on rehearing on other grounds*, No. 00-0282, 2001 WL 1412951 (Tex. June 21, 2001). There is no liability under the statute if the insurer is not liable on the insurance clam made by the insured. *State Farm Life Ins. Co. v. Martinez*, 216 S.W. 3d 799, 806 n.36 (Tex. 2007), *citing Progressive County Mut. Ins. Co. v. Boyd*, 177 S.W. 3d 919, 922 (Tex. 2005)("There can be no liability under article 21.55 if the insurance claim is not covered by the policy."). Mercedes-Benz has failed to establish a claim under the Error and Omission coverage or the excess/umbrella coverage.

As noted, Mercedes-Benz failed to file a response to this motion.

### Court's Decision

Because the Court concludes that in both motions Sentry has correctly stated the law and applied it to the issues before the Court, and because Mercedes-Benz has failed to raise a genuine issue of material fact on any of its claims against Sentry, the Court

ORDERS that Sentry's two motions for partial summary judgment (#11 and 20) are GRANTED. A final summary judgment shall issue by

separate document.

    **SIGNED** at Houston, Texas, this __13th__ day of __March__ , 2014.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE